IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN RUTH TAYLOR,　　　　　　　　　　　　No. 3:16-CV-00474-HZ

   Plaintiff,

 v.

THRIFTY PAYLESS, INC., a California　　　　　OPINION & ORDER
Corporation doing business as RITE-AID,

   Defendant.

Jess M. Glaeser
JESS M. GLAESER, PC
737 SW Vista Avenue
Portland, OR 97205

 Attorney for Plaintiff

John R. Barhoum
Sarah Tuthill-Kveton
CHOCK BARHOUM, LLP
121 SW Morrison, Suite 415
Portland, OR 97204

 Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Karen Taylor brings a negligence claim against Defendant Thrifty Payless, Inc. for personal injuries sustained in a slip and fall in a Rite-Aid store in Portland. Defendant moves for summary judgment. Because Plaintiff produces no evidence from which a reasonable juror could conclude that Defendant actually knew, or reasonably should have known, about the spill before Plaintiff's fall, I grant Defendant's motion.

BACKGROUND

Defendant operates a drugstore in downtown Portland, Oregon. Plaintiff works nearby and was a customer in Defendant's store on February 13, 2014. According to Plaintiff, around midday, she left her office, walked to Defendant's store, and shopped there for five to ten minutes. Tuthill-Kveton Decl. Ex. 1 ("Pl.'s Dep.") 51:10–11, 53:14–17, ECF 21-1. Plaintiff was near the end of an aisle examining an item on the shelf when stepped and immediately fell in a large puddle, roughly two feet by two feet. *Id* at 57:24–58:2, 60:4–14, 69:7–9. The liquid she slipped in was brown or yellow in color, and she believed it could have been broth or soup. *Id*. at 69:3–14.

Plaintiff testified in her Deposition that after she fell, she waited for about five minutes in a cashier's line, then told the cashier that she had fallen and asked for paper towels which she used to wipe herself off. *Id.* at 68:12-15, 71:6-9, 74:8-12.[1] Afterward, Plaintiff returned to where she fell, where she noticed one, perhaps two, "cones" on the ground near the spill. *Id.* at 68:16–23, 74:4–19. There, Plaintiff warned another customer about the spill before the other customer could step in it. *Id*. at 68:17–23. Plaintiff then returned to her office, where she sent an email to

---

[1] Evidence supports the conclusion that Plaintiff told the cashier that she fell. Pl.'s Dep. 71:6–9, 74:8–12. As discussed further below, there is no evidence to support the assertion that she informed the cashier at this time that there was a spill in the store.

2 – OPINION & ORDER

her administrative assistant, time-stamped 11:11 a.m. Taylor Decl. ¶ 2, ECF 24. Plaintiff testified that she returned to Defendant's store about thirty minutes later. Pl.'s Dep. at 71:22–72:14. According to Nicole Fitz, one of Defendant's employees, Plaintiff told Fitz that she had slipped on the floor and asked to speak with a manager. Fitz notified Terrel West, the manager. Tuthill-Kveton Decl. Ex. 2 ("Fitz Dep.") at 21:25–22:3, 22:17–18, 31:3–22, ECF 21–2; Tuthill-Kveton Decl. Ex. 3 ("West Dep.") at 25:13–17, ECF 21-3.[2] Fitz testified that she saw West and Plaintiff talking. Fitz Dep. at 25:12–17.

Fitz typically worked from 7:00 a.m. to 3:30 p.m., and took her lunch break between 11:00 a.m. and 11:30 a.m. Fitz Dep. at 29:19–23, 9:15–25. On her way back from her lunch break, Fitz noticed two "wet floor" signs at the end of one of the aisles. *Id.* at 22:22–24:2. She did not recall whether she saw them before her lunch break began. *Id*. at 24:3–9.

West testified that he first learned that there was liquid on the floor when he got a call from a cashier, whom he believed to be Fitz, sometime before noon. West Dep. at 14:12–22, 16:14–20. The cashier told him there was a wet cleanup in Aisle 11. *Id.* at 16:14–20. West testified that he believed a customer other than Plaintiff had reported the spill. *Id.* at 20:19–24. After being told of the spill, West set up a pair of wet-floor signs before heading to the basement to fetch a mop and bucket. *Id.* at 14:19–25, 16:14–25. West testified that it took him perhaps three to five minutes to retrieve the items and bring them upstairs. *Id.* at 22:21–23:3; 25:8–12. West did not know how long the liquid (which he believed was dog urine at the time, but thought that it could also have been human urine) was on the floor before the cashier he believed to be

---

[2] During her Deposition, Plaintiff stated that she did not remember actually speaking with the manager at that time, but was instead given his name by Fitz and told to call back later, which she did. Pl.'s Dep. at 72:14–19. However, in her Declaration, Plaintiff concedes that while she does not remember speaking with the manager, she must have because the other declarants say she did. Pl.'s Decl. ¶ 8.

3 – OPINION & ORDER

Fitz called him to inform him of the spill. *Id.* at 19:9–14; 20:16–24. West testified that to his knowledge, at no time before he finished cleaning up the spill did he or any other employee place warning signs other than the two West himself placed. West Dep. at 51:13–17.

After West brought the mop and bucket to the location of the liquid, Fitz called West, and this time told him that a customer (Plaintiff) wished to speak with him. *Id.* at 25:8–17. As mentioned above, this is when Plaintiff returned to the store to report her injury approximately thirty minutes after initially leaving, because her hand and wrist had developed significant pain. Pl.'s Dep. at 71:22–72:14. West then left his mop at the site of the spill and spoke with Plaintiff near the front of the store. West Dep. at 25:13–17. Plaintiff told him that she had slipped and that she had not seen any wet-floor signs. *Id.* at 28:17–21. She told him her hand hurt. *Id.* at 28:21–25. West took her information and called it in to Rite-Aid's Risk Management Department. *Id.* at 28:22–29:2. West testified that when they spoke together, Plaintiff gave no indication of how long it had been since she had fallen. *Id.* at 29:13–15. He did not notice any wetness on her clothing or body, and did not know whether Plaintiff had slipped before or after he placed the warning signs around the spill. *Id.* at 29:16–24. After speaking with Plaintiff, West returned to the liquid and finished cleaning it up. *Id.* at 27:13–15. West testified that the spill did not look like anyone had walked through it, and he saw no tracks leading away from the spill, or any wetness on the ground besides the puddle itself. *Id.* at 54:15–18, 55:6–9. Later that day, West reviewed the security tapes from that morning, and did so again a day or two later with Risk Management, and found that the cameras did not cover the area of the spill. West Dep. at 36:19–38:5.[3]

---

[3] As discussed below in connection with Plaintiff's spoliation of evidence argument, Defendant's video images are automatically deleted every thirty-seven days. The images West reviewed were not preserved.

Plaintiff additionally states that "[at] no time while I was in the Rite Aid store do I recall hearing over the intercom any announcement about a wet spill on the floor." Pl's Decl. ¶ 10. She adds that "[at] no time while I was addressing the cashier or cleaning myself off did I hear or observe the cashier report the spill to her manager or anyone else." *Id.* at ¶ 12.

Although Plaintiff's recitation of the events produces a straightforward timeline, consideration of the testimony of Fitz and West creates ambiguity about the sequence of events after Plaintiff's fall. For example, Plaintiff's assertion that she first observed the cones after she fell but before she left the store the first time, meaning sometime close to 11:00 a.m., contradicts West's testimony that there were no cones until he placed them there after being notified by Fitz, but not until sometime before noon. Further, if, as West alleges, Plaintiff arrived to speak with him three to five minutes after he placed the cones, then Plaintiff may have been gone from the store for only five minutes rather than thirty. However, in that scenario Fitz would then be incorrect about when she took her lunch break, as she must have taken it sometime around 10:30 a.m. in order to have seen the cones up upon her return from lunch and while West was down fetching the mop. In the end, the Court does not need to resolve exactly when these various events took place to resolve the legal issues. The time *after* the fall is not important. What matters is how long the liquid was on the floor *before* the fall and whether Defendant knew or should have known of its presence.

## STANDARDS

I.        Summary Judgment

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

II.     Spoliation of Evidence

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993). A party should be penalized for destroying documents only if it was wrong to do so; that requires, at a minimum, some notice that the documents are potentially relevant. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

Under *Akiona*, the imposition of sanctions for spoliation of evidence is based on two rationales: one evidentiary and one deterrent.

> The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document.

*Id.* "The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." *Id.* at 161.

When relevant evidence is lost accidentally or for an innocent reason, *i.e.* in the absence of bad faith or intentional conduct by a defendant, an adverse evidentiary inference from the loss may be rejected. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.,* 306 F.3d 806, 824 (9th Cir. 2002). Additionally, an adverse evidentiary inference may be rejected if, under the totality of the circumstances, a rational jury would not infer that a defendant's loss of evidence indicated the missing evidence threatened defendant's legal position and needed to be covered up. *Id.* at 824.

## DISCUSSION

I. Negligence

Plaintiff alleges that Defendant is liable on the basis of one or more of four different negligent acts. Namely, Plaintiff alleges that Defendant a) failed to make the premises reasonably safe; b) failed to take reasonable steps to promptly remove the puddle of liquid from the Rite-Aid store floor; c) failed to adequately warn Plaintiff by placing cones around the area of the liquid on the floor; and d) failed to properly secure the area, knowing that the puddle of liquid could pose additional risks to patrons of the store.

To prevail on any of her specifications under Oregon law, Plaintiff, an invitee who slipped on a foreign substance in an occupant's store, must prove one of the following: (1) that

the substance was placed there by the occupant; (2) that the occupant knew the substance was on the floor and failed to remove it; or (3) the substance had been on the floor for a sufficient amount of time, such that the occupant should have discovered and removed it. *Van Den Bron v. Fred Meyer, Inc.*, 86 Or. App. 329, 331, 738 P.2d 1011, 1013 (1987). Plaintiff does not allege that Defendant placed the liquid on the floor. Accordingly, summary judgment hinges on whether Defendant actually knew the liquid was on the floor before Plaintiff's fall, or whether the liquid was on the floor for long enough before Plaintiff's fall that Defendant should reasonably have discovered and removed the liquid.

A long line of Oregon cases, and recent decisions by this Court, have granted summary judgment against slip-and-fall claims materially identical to the case at bar. Several of them provide guidance on the issues involved here. In *Weiskopf v. Safeway Stores, Inc.*, 271 Or. 630, 533 P.2d 347 (1975), a case involving a slip on a greasy substance on a store floor, the Oregon Supreme Court held that in the absence of proof from which a jury can draw an inference about how long a substance was on the floor, there is no basis for a finding of negligence. *Id.* at 632, 533 P.2d at 348. Without a witness or some physical evidence evincing when the substance was placed on the floor it is "just as probable that the substance was spilled immediately before the accident as it was that it was spilled three hours previously or at any other time." *Id.* (citing *Pavlik v. Albertson's Inc.*, 253 Or. 370, 454 P.2d 852 (1969)). This equal probability was insufficient to permit a jury to draw the inference that the substance was there for an unreasonable amount of time. *Id.*

In *Laygui v. Wal-Mart Stores, Inc.*, No. 6:13-CV-00327-AA, 2014 WL 3695536 (D. Or. July 24, 2014), Judge Aiken granted summary judgment to the defendant storeowner because the plaintiff "offered no direct evidence indicating that, at any point prior to her fall, defendant's

employees actually knew that detergent, or any other substance, had been spilled on the floor." *Laygui*, 2014 WL 3695536, at *2. To allow the issue of whether a defendant knew of a spill prior to a plaintiff's fall to get to a jury without some kind of evidence directly indicating a defendant knew of the spill would allow a jury to engage in impermissible "speculation and guesswork." *Id.* (citing *Griffin v. K.E. McKay's Market of Coos Bay, Inc.*, 125 Or. App. 448, 450, 865 P.2d 1320, 1321 (1993)). In *Griffin*, the Oregon Court of Appeals affirmed a motion for a directed verdict granted by the trial judge because the plaintiff in that case presented no evidence that at any time before the fall, the defendant's employees actually knew that ice or water had been spilled. 125 Or. App. at 452, 865 P.2d at 1322. And, evidence argued by the plaintiff to suggest that the defendant should have known about the ice or water was insufficient because it did not show when the plaintiff fell in relation to when a dolly with bagged ice was left unattended. *Id.* at 452, 865 P.2d 1323.

More recently this Court granted summary judgment to a defendant store occupant in *Manning v. Victoria's Secret Stores, LLC*, No. 3:15-CV-00693-HZ, 2016 WL 1599805 (D. Or. 2016) (Hernández, J.), *appeal docketed*, No. 16-35377 (9th Cir. May 5, 2016). In that case a woman slipped and fell on an advertising sign on the floor in a Victoria's Secret store. *Id.* at *1. The only evidence in the record about how long the sign was on the floor was from a clerk who testified that she had passed through the area where the plaintiff fell about ten minutes before the incident and did not notice the large sign or anything else on the ground. *Id.* at *4. Because this evidence did not create an issue of fact as to whether the sign was on the floor for such a time that an employee should have reasonable discovered it, "[the plaintiff's] failure to produce any other evidence about the length of time the sign was on the floor [was] fatal to her claim." *Id.*

Plaintiff relies on the testimony contained in her Declaration and Deposition, and the testimony of Fitz and West, to contend that Defendant knew of the spill "significantly prior to 11:00 a.m.," the approximate time of Plaintiff's fall, or that the spill had been there for such a period of time that Defendant should have found it with reasonable diligence. Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") 4, ECF 22. While she concedes that "no one can pinpoint the [precise] time of the spill, or the time that [D]efendant was notified of the spill[,]" *id.* at 6, she argues that there are facts in the record suggesting that Defendant knew of the spill or that the spill occurred some considerable time before her fall.

Plaintiff makes a number of arguments as to why a jury could reasonably find in her favor. Plaintiff argues that because she did not hear or see anything while she was in the store indicating that the cashier notified anyone that there was a spill, Defendant must have been notified of the spill long before Plaintiff arrived at the store the first time. She further contends that because she did not see a dog while she was in the store, Defendant was notified of the spill before her fall. She argues that because she informed the cashier that she had fallen in a spill and because Fitz and West testified that someone other than Plaintiff first told Defendant about the spill, the spill must have been reported before her fall.[4] She also argues that because West began cleaning up the spill just before he spoke with Plaintiff around 11:35 a.m., he must have been notified of the spill a significant time before she entered the store.

---

[4] Plaintiff makes this assertion in the Argument section of her Response to Defendant's Motion for Summary Judgment. However, she provides no citation to anywhere in the Deposition transcripts or her Declaration showing she actually told the cashier about a spill before she returned to her office. In her Deposition Plaintiff states that she merely told the cashier that she fell, and then left without telling any employee about the spill. Pl.'s Dep. at 68:5–25; Pl.'s Decl. at ¶ 6. But even assuming she did inform Defendant of the spill after her fall, that does not show that Defendant learned of the spill *before* her fall.

10 – OPINION & ORDER

Defendant contends that Plaintiff's arguments are based on illogical inferences, fail to reveal any information about how or when the liquid came to be on the floor, or fail to create an inference as to when Defendant was informed of the spill. I agree with Defendant. The problem for Plaintiff is that even accepting and construing the facts in her favor, she cannot meet her burden of establishing a genuine issue of material fact as to Defendant actually having knowledge of the spill *before* her fall or as to the presence of the liquid on the floor for such time that Defendant should have known about it.

All of Plaintiff's arguments are based on impermissible guesswork and speculation. For example, whether Plaintiff saw a dog or not, in the store, outside, or nearby, says nothing about when Defendant learned of the spill or how long the liquid was on the floor before Plaintiff fell. It certainly does not provide a jury with a basis to make a logical inference that Defendant knew about the spill before Plaintiff fell or about the length of time the liquid was there. And, the liquid has not been definitively identified. It could have been dog urine but it also very well could have been something else. Plaintiff is only speculating as to whether it was dog urine.

The same result occurs when considering Plaintiff's argument that because West began cleaning up the spill just before Plaintiff returned to the store about 11:35 a.m., he must have been notified of the spill a significant time before she entered the store. This is mere speculation and conjecture. *E.g., Griffin*, 125 Or. App. at 451-52, 865 P.3d at 1322 ("when a matter remains one of pure speculation or conjecture" it does not provide a "reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in the result") (internal quotation marks omitted). A jury could not draw a reasonable inference that Defendant knew about the spill before Plaintiff's fall based only on the fact that West was

cleaning the spill thirty to forty-five minutes after Plaintiff fell. Plaintiff fails to carry her evidentiary burden under *Weiskopf*, *Laygui*, and similar cases.

At oral argument Plaintiff stressed that before leaving the store the first time, and after obtaining something from the cashier to clean herself, she observed one or two cones at the site of the spill. She contends that because she saw cones there at that time and that she warned another customer about the spill before that customer fell, she creates an issue of fact regarding her specification of negligence that Defendant's warnings were inadequate. As with her other arguments, this too fails. These facts do not show that it is more probable than not that Defendant knew or should have known bout the spill *before* Plaintiff's fall.

Plaintiff's arguments are not supported by direct evidence or logical inference. Instead, she relies on speculation and conjecture which is insufficient to create an issue of material fact precluding summary judgment. Moreover, to the extent any of Plaintiff's inferences are reasonable, they produce nothing more than the "equal probability" that *Weiskopf* rejected as insufficient to defeat summary judgment in a slip-and-fall case.

II. Spoliation

Plaintiff blames Defendant's failure to preserve evidence for her inability to present sufficient evidence. She asks this Court to deny Defendant's summary judgment motion as a sanction for Defendant's destruction of the store video. Plaintiff argues that Defendant should have preserved the security video footage from the day of the accident. Plaintiff believes that the footage was relevant to her claim because, while it does not show the area of the spill or Plaintiff's fall, it reasonably would show when Plaintiff entered and exited the store, whether a dog had been in the store, and when West headed toward the spill to clean it up. Plaintiff additionally argues that the video would have shown a customer informing the cashier that there

was a spill in the store, and likely would have pointed in the direction of the spill, and therefore would have determined the precise time that Defendant gained knowledge of the spill.

Defendant makes a number of arguments on this issue, chief among them that it had no obligation to preserve security footage because it did not show the area of the spill and fall, and that it would be unduly burdensome to require Defendant to preserve all video surveillance each time any incident is reported. Defendant further argues that there is nothing to support the argument that even if Defendant had preserved all the surveillance videos, the videos would contain any relevant evidence. *Id*. at 8–9. Defendant asserts that even if every video from every angle from the entire day of the incident were produced, it would provide no evidence as to the origin of the liquid or precisely when Defendant learned about it.

Plaintiff's arguments are unconvincing. As Defendant points out, Plaintiff has already constructed a reasonably accurate timeline of the events relevant to her claim. Plaintiff entered the store shortly before 11:00 a.m., shopped for five to ten minutes before she fell, waited in line for about five minutes to get paper towels, and was back in her office by 11:11 a.m. Plaintiff saw no wet-floor signs before she fell. Plaintiff returned to the store thirty minutes later and reported the incident before speaking with West as he was returning from the basement with a mop to clean the spill at approximately 11:35 a.m. Because the Court accepts these facts as undisputed, Plaintiff suffers no prejudice at the loss of the surveillance videos, at least as to Plaintiff's ability to create an accurate timeline of events.

Plaintiff's argument that the video might show a customer informing Defendant of the spill is speculative. Plaintiff argues that the video footage would have shown a customer informing the cashier of the spill. She asserts that because the customer might not know the aisles by their numbers, the customer would have to point in the direction of the spill. Plaintiff

argues that based on the image of a customer pointing, a fact finder could determine when Defendant learned of the spill. This line of reasoning is entirely speculative. To succeed on her negligence claim, Plaintiff must present evidence showing that Defendant was informed of the spill *before* Plaintiff fell. Plaintiff is merely speculating that the video *might* show a customer informing Defendant of the spill earlier and Defendant thereafter neglected to clean the spill.

Sanctions for spoliation are inappropriate here. There is nothing to indicate that the evidence likely contained in the videos could reasonably be expected to show when the liquid got on the floor or how long it had been there. Additionally, the rationales supporting spoliation sanctions do not support imposition of such sanctions. The *Akiona* case provides guidance on that point. The court in that case found that, in the absence of evidence indicating that the defendant destroyed records in response to the litigation, the evidentiary rationale behind spoliation sanctions did not apply. *Akiona*, 938 F.2d at 161. The court further elaborated, stating that "[the defendant's] destruction of the records does not suggest that the records would have been threatening to the defense of the case, and it is therefore not relevant in an evidentiary sense." *Id.*

Defendant did not destroy the videos in response to this litigation. Cases make clear that "in response to litigation" means after a complaint has been filed, a discovery request has been made, a letter openly threatens litigations, or some other reason indicating that litigation is likely. *E.g.*, *Kronisch v. United States*, 150 F.3d 112, 126–27 (2nd Cir. 1998); *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005–06 (D. Ariz. 2011); *Turner v. Huson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991); *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 550–51 (D. Minn. 1989). Here, Plaintiff herself points out that the surveillance footage is erased from Defendant's hard drive every thirty-seven days. Pl.'s Response at 7; West Dep. at 37:8–15. The

erasure occurred when Defendant knew only that Plaintiff had fallen and hurt her wrist. There was no basis for Defendant to conclude that litigation was likely. Defendant's risk management department went through the surveillance footage of that day, determined that the footage did not include evidence of when the spill occurred, or when Defendant was put on notice of the spill, and therefore found that it contained no relevant footage. As in *Akiona*, there is no evidence indicating Defendant destroyed records in response to this litigation. Therefore, the evidentiary rationale of spoliation sanctions is not present.

As to the deterrent and prophylactic rationale behind spoliation sanctions, there is no support for sanctions on that account either. "A party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant." *Akiona*, 938 F.2d at 161. Plaintiff argues that Defendant should have known the videos would be relevant because a risk management department, by virtue of its purpose, must have known the elements of a premises liability claim. Plaintiff further argues that risk management knew that it should preserve "evidence of when the spill occurred, when [P]laintiff approaches this spill, when [D]efendant was put on notice of the spill, and when [D]efendant took steps to remove the hazard." As discussed above, these videos, which do not show the location of the spill and fall, are not relevant to any necessary element of Plaintiff's claim. It is uncontested that no cones were observed until sometime *after* Plaintiff fell; the precise time the cones were placed is irrelevant, unless and until some evidence can be produced that demonstrates when the liquid was *first placed* on the floor. Unless the precise time of the spill is shown, knowing the precise time Plaintiff entered the store would not reveal whether the liquid was on the floor so long before Plaintiff fell that Defendant should reasonably have discovered it. Because the videos are not relevant to any necessary element of Plaintiff's

claim it cannot be said that it was wrong for Defendant to dispose of them. Penalizing Defendant for its conduct here, where there is no evidence of bad-faith destruction of the videos or notice that they would be relevant to the litigation, would not serve any deterrent function. Imposition of spoliation sanctions is therefore inappropriate.

CONCLUSION

Defendant's Motion for Summary Judgment [19] is granted.

IT IS SO ORDERED.

DATED this 12 day of May, 2017.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge